## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY PETERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF JERSEY CITY; JERSEY CITY POLICE DEPARTMENT; OFFICER MOHAMED J. SAHEED, Individually and in his official capacity as an Officer with the Jersey City Police Department; OFFICER JEISON MARTINEZ, Individually and in his official capacity as a Police Officer for the Jersey City Police Department; OFFICER WENDOLOWSKI, Individually and in his official capacity as a Police Officer for the Jersey City Police Department; LIEUTENANT MOHAMMAD RIAZ; Individually and in his official capacity as a Lieutenant for the Jersey City Department; JOHN DOES 1-10 (fictitious names), Individually and in his/her official capacity as a Police Officer for the Jersey City Police Department; ABC CORPORATIONS 1-10 (fictitious names),<br><br>    Defendants. | Civil Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The Plaintiff, Anthony Peterson, ("Plaintiff" or "Peterson") residing in Jersey City, New Jersey, complaining of the Defendants, says:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has supplemental jurisdiction over the state law causes of action under 28 U.S.C. § 1367(a).

2. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

3. Plaintiff was at all material times a resident of Hudson County, New Jersey.

4. Defendants Officer Mohamed Saheed ("Saheed"), Officer Jeison Martinez ("Martinez"), Officer Wendolowski ("Wendolowski") and Lieutenant Mohamed Riaz ("Riaz"), at all times in the relevant time period, were duly appointed Officers of the Jersey City Police Department acting under color of law and pursuant to their duties as officers/agents for Jersey City. Defendants, Saheed, Martinez, Wendolowski and Riaz, are being sued individually and in their official capacities.

5. The City of Jersey City is a municipal corporation and a public employer of the individual Defendants.

6. The Jersey City Police Department is and was, at all times in the relevant time period, a division and/or department of the City of Jersey City entrusted with, among other things, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of the City of Jersey City.

7. Defendants John Does 1-10, are presently unknown police officers, employees, agents and/or representatives of the City of Jersey City and/or Jersey City Police Department or other unknown individuals whose unlawful actions are described, referenced and/or set forth herein. All are being sued individually and in their official capacities.

8. Defendants ABC Corporations are presently unknown business entities whose unlawful actions are described, referenced and/or set forth herein.

9. Plaintiff has duly complied with all notice requirements including the timely filing of a Tort Claims Notice at least six (6) months before commencing this action.

## CAUSE OF ACTION

10. On June 8, 2019, Saheed and Martinez were operating an unmarked Jersey City Police Department Ford Fusion police vehicle in Jersey City, New Jersey when they responded to a call around MLK Drive and Bayview.

11. Saheed was the driver and Martinez was riding in the passenger seat.

12. Upon their arrival at MLK Drive and Bayview Saheed and Martinez observed Plaintiff.

13. Martinez exited the unmarked police vehicle and handcuffed Plaintiff in the middle of Bayview Avenue.

14. While Martinez and Plaintiff remained in the middle of the roadway, Saheed Saheed placed the police vehicle in reverse striking both Martinez and Plaintiff.

15. Saheed then got out of his vehicle and saw Martinez and Plaintiff were hit.

16. Saheed then returned to his vehicle and intentionally struck Plaintiff, who remained handcuffed and injured, over a second time.

17. After striking Plaintiff a second time Saheed again exited his vehicle and began rendering aid to Martinez while leaving Plaintiff handcuffed and injured.

18. During this time Wendolowski and other officers arrived on the scene and failed to render aid to Plaintiff.

19. Plaintiff was then transported to the Jersey City Medical Center by ambulance where he remained from June 8, 2019 to June 28, 2019 after being diagnosed and treated for a fractured spine, multiple broken ribs, a broken pelvis, a mesenteric tear, concussion, internal and external lacerations, and other injuries.

20. Plaintiff's injuries were so severe that they required immediate surgical intervention.

21. On June 28, 2019, Plaintiff was discharged from the Jersey City Medical Center and transferred to Columbus Hospital's long term care unit for rehabilitation, physical therapy, wound treatment, and management of his medical condition.

22. Plaintiff remained in long term care being rehabilitated from June 28, 2019 to August 22, 2019.

23. Plaintiff continues to treat and suffer from his injuries.

24. To cover up Saheed's outrageous conduct, Saheed and his brother officers conspired to concoct a version of events, as contained in Saheed's sworn Warrant Complaint, which indicates that Martinez was struck by a vehicle because of Plaintiff's flight into the road.

25. Riaz subsequently authored a Crash Investigation Report that not only contradicts the version found in Saheed's sworn Warrant Complaint but further attempts to cover up Saheed's conduct.

26. According to Riaz's Crash Investigation Report Saheed reversed over Plaintiff and Martinez on Bayview – a fact Plaintiff agrees with.

27. Riaz's investigation report, however, intentionally leaves out that Saheed subsequently ran over Plaintiff a second time while he lay injured, helpless and handcuffed in the middle of the street.

**FIRST COUNT**
**Excessive Force**
**42 U.S.C. § 1983 &**
**New Jersey Civil Rights Act New Jersey Constitution**
**N.J.S.A. § 10:6-2** *et seq.*

28. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

29. During the course of the detention and/or arrest of Plaintiff, Defendants intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiff, thereby depriving Plaintiff of his right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution of the State of New Jersey and the Law of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act.

30. Plaintiff was seized under the Fourth Amendment and under the totality of the circumstances the Defendant(s)' actions were not objectively reasonable, given that Defendant(s) intentionally ran Plaintiff over with a police vehicle.

31. There was no justification for the deadly use of force, or any force for that matter, and such use of force was unnecessary and unwarranted.

32. The conduct of the Defendant(s) occurred while they were acting under color of law and in their official capacities.

33. All of the actions and/or omissions described above were undertaken in a willful and malicious manner with an immoral purpose to injure and/or cause harm to Plaintiff. Defendant(s) are, therefore, liable to Plaintiff for punitive and compensatory damages.

34. As a direct and proximate result of Defendant(s)' acts and/or omissions, Plaintiff suffered physical and mental anguish and injury all to his great detriment.

## SECOND COUNT
**Municipal Liability**
***Monell*, NJCRA, Negligent Supervision/Negligent Training/Municipal Liability**

35. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

36. At all relevant times, Defendants, Jersey City and Jersey City Police Department, were the employer of the individual Defendants and the individual Defendants were acting as their agents, servants and employees.

37. Jersey City and Jersey City Police Department, failed to use reasonable care in the selection of its employees, and/or servants, failed to properly train and/or supervise the individual Defendants, and failed to provide the appropriate safeguards to prevent the assault, false

arrest, improper detention and imprisonment, malicious prosecution, use of excessive force, and violation of the rights of Plaintiff.

38. Jersey City failed to train its officers in use of force so as to prevent the Defendant officers from assaulting Plaintiff and applying excessive force against the Plaintiff. They also failed to train their officers to not assault a defenseless person, such as the Plaintiff or employ a use of force continuum so as to prevent such a horrific attack and substantial injuries.

39. Jersey City also failed to train their officers regarding the use of a vehicle as a form of deadly force, and to refrain from using a police vehicle in that manner.

40. Indeed, Jersey City failed to teach their officers that even if Plaintiff was a suspect of some crime, they are not permitted assault that person and if they see other officers engaged in misconduct, they must intervene to prevent it.

41. Jersey City thus created a tacit policy and custom of permitting the Defendant officers' actions to continue with their imprimatur.

42. Indeed, the Defendant officers were upon information and belief subject to several civilian complaints, but said complaints were never meaningfully investigated and the Defendant officers were not disciplined.

43. What is more, despite the obvious need for supervision of the Defendant officers and other officers who are known to commit crimes and violate the rights of others, no additional or meaningful supervision is provided to these individuals. This sends the message that there is a culture where officers can act with impunity and will never be held accountable.

44. Jersey City and Jersey City Police Department and its Officers acted under color of law pursuant to an official policy or custom and practice of Jersey City and Jersey City Police

Department whereby false arrest and the use of excessive for was permitted, tolerated, encouraged, and condoned, and intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully and maliciously conducting, permitting or allowing excessive force upon Plaintiff in violation of the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and/or New Jersey.

45. The public record is rife with officers run amok at the Jersey City Police Department with nearly twenty officers pleading guilty and/or being charged with crimes in recent years — including the former chief of police.

46. It is clear that Jersey City and Jersey City Police Department willfully fail to supervise their officers such that officers feel that they can violate the law and the rights of civilians with impunity.  This deliberate indifference to the rights of citizens who are all but guaranteed to have their rights violated as a result is a policy and custom of Jersey City.

47. This causes a culture where, as here, officers, such as the Defendants, to feast on a sense of entitlement and impunity.

48. The lack of meaningful supervision or IA department has created a dangerous culture that encourages officers to violate the rights of civilians as they know that they will not be supervised or properly monitored or investigated.

49. Jersey City and Jersey City Police Department had knowledge of or had it diligently and reasonably exercised its duties to instruct, supervise, control and discipline its employees, agents and/or servants, would have had knowledge of the wrongful acts and/or omissions

identified above and intentionally, knowingly or with deliberate indifference to Plaintiff's rights, failed or refused to prevent their commission and/or omission.

50. Jersey City and Jersey City Police Department, therefore, directly or indirectly, and under color of law, thereby approved or ratified the unlawful, malicious and wanton conduct of the individual Defendants.

51. Finally, Jersey City and Jersey City Police Department maintained a policy whereby they failed to investigate Internal Affairs complaints thereby creating a policy and custom whereby officers felt that they could violate the rights of citizens with impunity.

52. Jersey City was alerted of the incident described herein, but Plaintiff has not received any correspondence from internal affairs about the status of the investigation, if any.

53. It is clear that the Jersey City and Jersey City Police Department failed to investigate the internal affairs complaint of the Plaintiff and others.

54. Indeed, as part of the investigation, Jersey City and Jersey City Police Department failed to interview witnesses or seek video and other evidence.

55. This is because Jersey City and Jersey City Police Department do not wish to meaningfully investigate IA complaints and associated matters.

56. Indeed, there are numerous cases in this District that have been filed regarding the unlawful pattern and practice of Jersey City and it has long been on notice via IA complaints and Lawsuits of the problems plaguing its police department as described herein.

57. This includes sham IA investigations, if any is done at all, that are aimed at insulating an offending officer rather than holding that officer accountable and preventing such conduct from occurring.

58. This also includes having unqualified individuals conduct internal affairs investigations.

59. Furthermore, IA investigations are defective in that they usually take the word of the Officers over the complainant and use irrelevant information, such as a complainant's criminal history, in deciding whether an officer is guilty of misconduct.

60. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff was disgraced, suffered physical and mental anguish and injury and monetary loss and damage all to his great detriment.

### THIRD COUNT
### Conspiracy

61. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. The Defendants agreed explicitly and through their actions that they would violate the rights of Plaintiff by covering up Saheed's Excessive Force against Plaintiff as well as their other unlawful conduct described herein.

63. The acts mentioned herein could not be accomplished without the assistance and agreement of the Defendant officers.

64. Defendants conspired to violate the rights of Plaintiff.

### FOURTH COUNT
### Intentional and Negligent Infliction of Emotional Distress

65. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. Defendants inflicted an immense amount of pain and suffering upon Plaintiff through their outrageous conduct striking him with a vehicle twice while he was defenseless and on the ground.

67. Defendants' conduct shocks the conscience as it was unwarranted, unnecessary, excessive, and without any justification or provocation.

## FIFTH COUNT
### Assault and Battery

68. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69. Defendants committed and assault and battery upon Plaintiff by placing him in fear of being struck and striking him with an automobile.

70. The Defendants' actions caused Plaintiff to suffer severe injuries, including those requiring surgery, and an extended stay in a medical facility.

71. Defendants' actions also caused him to suffer mentally and emotionally for the brutal physical assault visited upon him at the hands of the Defendants.

## SIXTH COUNT
### Negligence

72. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Defendants, as sworn members of law enforcement, had a duty to protect Plaintiff from the injury and Constitutional violations which he suffered.

74. Defendants breached their duty by negligently hitting Plaintiff with an automobile proximately causing him physical and emotional harm.

75. Defendants' actions, as more fully described herein, were per se negligent.

76. Defendants' breach of that duty is the proximate cause of Plaintiff's injury and damages.

77. Indeed, Defendants failed to use the proper care in handling Plaintiff and operating their vehicle, causing Plaintiff to suffer serious permeant physical and emotional injuries.

78. Defendants use of their vehicle breached all standards for the use of the vehicle, including how to operate their vehicle so as to avoid injury to the public and individuals in their custody.

79. Additionally, upon information and belief, the vehicle lacked normal safety equipment that would have prevented the Plaintiff's injuries, including but not limited to, sensors that assist with safely identifying persons and objects around the vehicle, such as back up sensors.

80. The failure to equip the police vehicle with standard safety equipment may have contributed in whole or in part to the manner in which Plaintiff was injured.

## SEVENTH COUNT
### Respondent Superior

81. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82. Where applicable under the relevant case law and as to be determined, certain of the aforementioned acts and/or omissions of the employees of the City of Jersey City may result in liability under the doctrine of Respondent Superior.

83. Indeed, Defendants were acting within the scope of their authority as police officer and in furtherance of the benefits of their employer, Jersey City.

83. As a result, the City of Jersey City bears responsibility for the acts and/or omissions of its employees and agents where properly cognizable under the relevant laws and statutes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages where permitted under the law;

(c) interest, both pre-judgment and post-judgment;

(d) attorney's fees;

(e) costs;

(f) injunctive relief, including but not limited to:

    (i) An order from this Court enjoining the Jersey City Police Department from continuing its pattern and practice of violating citizens' civil rights;

    (ii) placement of the Jersey City Police Department in receivership for the purpose of instituting programs to train, instruct, discipline, control, and supervise the officers of the Jersey City Police Department;

(g) and all such other relief as this court may deem appropriate, equitable, and just.

## JURY DEMAND

Plaintiff demands a trial by jury in this action for all issues triable by a jury.

## DESIGNATION OF TRIAL COUNSEL

Joel Silberman, Esq. and Aymen A. Aboushi, Esq. are hereby designated as trial counsel.

## CERTIFICATION PURSUANT TO L.CIV.R.11.2

I certify that the matter in controversy is not the subject of any other action pending or contemplated. I further certify that I am aware of no other parties who should be joined in this matter.

Dated: January 26, 2021

Respectfully submitted,

By:   /s Joel Silberman, Esq.        s/Aymen A. Aboushi, Esq.
      Joel Silberman, Esq.           Aymen A. Aboushi, Esq.
      The Law Offices of Joel S. Silberman   The Aboushi Law Firm
      26 Journal Square, Suite 300       1441 Broadway, 5th Floor
      Jersey City, NJ 07306           New York, NY 10018
      Tel. (201) 420-1913             Tel. (212) 391-8500
      Fax. (201) 420-1914            Fax. (212) 391-8508
      Email joel@joelsilbermanlaw.com    Email: Aymen@Aboushi.com